at all. Oral argument not to exceed 15 minutes per slide. Mr. Frank for the appellate, when ready. May it please the court, Jonathan Frank for Get Back Up, and I reserve four minutes for rebuttal. The issue for the court is how to resolve a conflict at the intersection of federal law, three different federal laws, and the city's inherent police power to regulate land use through zoning. The fortunate thing I think for, at least from my point of view and I think for the court's benefit, is that 12 years ago this court created a template that's been followed, maybe not directly but implicitly by other courts since then, in the MX group case. And the template that comes out of the MX group case is for how to analyze and balance these competing interests where we have anti-discrimination laws, three different ones at the federal level, that conflict to some extent with the city or state's police power to regulate activities such as land use. The reason the MX case is so compellingly critical to the issues here is the facts of the case are very similar. We had a land use, which was a methadone clinic. We had a city that had, through its zoning power, eliminated the use entirely. Earlier it had simply rejected a building permit or a use permit. And this court, looking at the situation, first of all, acknowledging that the city does have police power, but nonetheless that police power has to be limited by the three federal statutes. Well, actually there were two in that case because it was not a residential use, so the Fair Housing Act didn't apply. This court in MX looks at that situation and analyzes a few questions that now don't have to be analyzed. First of all, is a group home or a substance abuse facility like this one, does it have standing under the federal statutes? That court said it did, so that's a resolved question. We don't have to look at it. That court also decided that because there was facial discrimination that there was not a reasonable accommodation issue that was required to be presented and that same applies here. The template that I believe should be followed is the method of analyzing how the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act control zoning when you're dealing with recovering addicts and recovering alcoholics. And it has been held and is not contested in this case that that group of people are protected as disabled under all three of those statutes. In the same way that anybody is protected by federal law, whether it's a civil rights claim or any other type of disability under RELUCA, whether it's somebody who's incarcerated, whether it's a church, there are a variety of people and organizations that are entitled to that type of protection. Standing was not a disputed issue before Judge Cleland and the MX group has the standing issue within it and a group home standing on behalf of its residents has standing to assert rights under those three statutes. So now the question is how do we balance these interests? We have a group of people who are disabled. We have a zoning ordinance that is clearly applying to them. So I understand your argument. On appeal, you're making a facial challenge to this court. Two challenges, but starting with facial. There's the facial and then there's the vagueness. And also there's the secondary argument that even if it's not facially discriminatory, through the Board of Zoning Appeals application of the statute allowing the neighbors to intervene and comment on fears and stereotypes about people who are recovering alcoholics and addicts, that the statute becomes, there's a violation through the application of the ordinance. Where is that? That's in the section regarding disparate treatment. Where? And it's also in the reply brief. Where is it in the main brief? That's the argument. Number one, the SASF should have been grouped within other public health agencies. That's a statute. That's a basic statute argument. I understand. We're going to go right on the vagueness, right? The ordinance is unconstitutional because it's void of vagueness. So really I didn't really prepare to examine the argument unless it's in here on this. Yes, Your Honor. I see the move from the first argument to the second on page 44. Without going into the language there, I don't know exactly what language we used in the brief. I know it's in the reply brief. Do you mean the last paragraph on the top of page 44? Do you mean under the city ordinance? Do you not have a brief in front of you? Oh, I do. I'm just saying I don't see a separate section in the brief. I know we argued the position to Judge Cleland and we pointed it out in the reply brief because the city This is an appeal from a position you lost. It wouldn't be with the arguments that are in the brief. I assume you were just arguing the facial one day. Let's stick with those two then so I can preserve the time. The issue on the facial challenge is that the city had come up with its own explanation before Judge Cleland, which was to draw an analogy between a substance abuse treatment facility and other public health uses, which we believe is the proper analogy because it is a public health use. But the city's argument through the old draft of paragraph 14 is one argument only, and that is the city has the right to distinguish a substance abuse facility from a nursing home, a hospital, a rest home, a convalescent home, or an adult foster care facility because people at a substance abuse treatment facility, according to this paragraph 14, had more recent contact with law enforcement. That is the entire justification for the city that they brought before Judge Cleveland. There's no evidence that that's true. There's no evidence to support the statement in the affidavit. Why is that a facial challenge?  Because a substance abuse treatment facility has to go through a conditional use permit process. All those other uses—nursing home, rest home, convalescent center, hospital—are allowed by right. And courts, looking at this issue, including the Pacific Shores decision from the Ninth Circuit from last year that we did cite in the brief, have decided that placing a burden on a property owner to go through a conditional use permit, which brings out the neighbors, which allows a completely different set of standards to be applied. When you guide one set of uses into a conditional use permit process but not other similar uses, that is the discriminatory element of the ordinance. So the question is, why are we distinct from the other uses that are by right? So the facial discrimination is we are, according to the ordinance, sent off in this other direction. These other uses are not. We could examine the facial questionability of it without necessarily being bound by what arguments the city made. Yes. That's what the district court did. Exactly. The district court made an analysis. What's wrong with the district court's analysis? Because the district court says we are not like a hospital. And the district court uses RLUIPA type of analogy, accepted zoning criteria. This court has not yet issued a decision following the other circuits that have looked at RLUIPA to determine what the standard will be. But if we assume the Seventh Circuit standard would apply, accepted zoning criteria. So first, under accepted zoning criteria, are we like a hospital? Not. Or like a rooming house? Not. Or like a nursing home? Not. Those were the three choices. The lower court said you are like a rooming house, not like the other two. Why are we like a rooming house? The court didn't use anything from the record that would support it. The city never argued that we're like a rooming house. A rooming house has no public health use whatsoever. A rooming house has more traffic, possibly more disruption in the neighborhood. You're dealing with people that come and go that don't stay under the supervision of any type of a staff. And the city would have had an obligation to come before Judge Cleland or here and say rooming houses are like substance abuse treatment facilities because. But there is no because. There is no answer to that. It was Judge Cleland who said for the first time in his decision, it's like a rooming house. The problem with the distinction with a nursing home and a hospital, hospitals have a more intensive use under accepted zoning criteria. Traffic, noise, you've got ambulances, you've got many more people. That is a more intense use. Judge Cleland had it backwards. Because if that is a more intense use, it should be regulated more than a substance abuse facility. But it's the opposite in the city of Detroit. A nursing home is nearly identical. You have people convalescing from a disabling medical condition. Judge Cleland said a nursing home has people who are physically disabled. Therefore, they're less ambulatory. You don't think that's true? You cannot distinguish between two groups of people both protected under federal law as disabled unless you are looking at an accepted zoning criteria. What accepted zoning criteria can there possibly be? Noise, traffic, parking. That would distinguish a nursing home with people who are less ambulatory from a substance abuse treatment facility that has people that are ambulatory. Whether the people are ambulatory or not has nothing to do with the noise, the traffic, the parking, any of the accepted zoning criteria. It has to do with the nature of the care that the residents take. Doesn't that have to do with going in and out of the building? There's more going in and out in a nursing home because you have more traffic. You have people coming to visit. The people in our facility don't come and go. There's no burden. In fact, the traffic burden, which is the only zoning burden that's ever been discussed, the traffic burden was resolved at the city level by studies that show there wouldn't be a traffic problem. We don't have a zoning criteria, namely traffic, that would implicate this use. If we are comparing to a nursing home and the only difference is ambulatory versus non-ambulatory, first of all, we believe that's an impermissible distinction to draw under the ADA. You have two groups of people that are both disabled. To say somehow recovering alcoholics and addicts are not as protected because they ambulate eviscerates all three of those statutes. The second problem is there's nothing about their ability to move within the facility that implicates a zoning problem. And Judge Cleland didn't find that there was. If you read his opinion, you will not find any evidence that there is a zoning problem, that there is a greater impact on the traffic, the noise, anything else because of a substance abuse treatment facility as compared to a nursing home. He just said that people move around. I just want to make a final point on the… You may want to take a rebuttal time to do it. Quickly, so I don't…it doesn't look like I just saved this for a rebuttal. The point for making this problem is very simple. There are criteria listed in the ordinance. Any one of them, if you don't hit it, you lose. So any one of them has a veto power. Number one and two are purely subjective, and there's no dispute about that. So the ordinance basically says if the neighbors come out and they are worried, that is enough to lose. And this court and many other courts have looked at ordinances that are subjective and ad hoc. And those are the two types of criteria, subjective and ad hoc. And said if they are subjective and ad hoc and provide no guidance for enforcement, they are void verbatim as they violate due process. And that's our argument as to this ordinance. Good morning. May it please the court. Sherry White on behalf of the defendants and appellees, City of Detroit and Board of Zoning Appeals. As the court can see, the overarching point that appellant is trying to make in this case is that this residential substance abuse service facility should be categorized as a by right use with hospitals or nursing homes as opposed to a conditional use akin to a rooming house. For example. Where would an adult foster care facility be? Yes. Judge Cleland was satisfied that it was categorized on the other side of the line. That we believe is correct. Judge Cleland went through exhaustively the distinctions between such a facility and a hospital or nursing home. With regard to a hospital, for example, even if a hospital had a residential substance abuse treatment program, that would not be the predominant purpose of that institution. With regard to nursing homes, those individuals are there largely because they are unable to physically attend to themselves, their daily needs, where that is not the case with individuals in a substance abuse service facility. Counsel, could I ask a question? Sure. Which side of the line does an adult foster care facility fall? An adult foster care facility is categorized, I believe, as a... It's more like a nursing home than it is like a rooming house. Yes, I believe it is. So you would have to distinguish one of these substance abuse service facilities from an adult foster care facility, correct, in order for the statute to be facially defensible? An adult daycare center, which is a by-right use, is that what you're referring to? Oh, for an adult foster care facility, is that a category? Supervision, assistance, protection, and personal care to seven or more adults. Oh, yes, that would be... Adult foster care facilities. I'm not getting it right. I have some notes here that could be wrong. You're the expert. You're referring to adult daycare center in section 61-9-75? I think it's 61-16-32. Adult foster care facility. Maybe it is 162. The by-right public, civic, and institutional uses. I'm sorry. Is the section you're referring to the by-right... Section 61-16-32 defines a facility as an establishment that provides supervision, assistance, protection, and personal care, in addition to room and board, to seven or more adults. An adult foster care facility is other than a nursing home or a mental institution. I guess they used to be called in the old days a home for the aged. My notes, that's why I'm asking you, indicate that that's on the side of a nursing home rather than on the side of a rooming house. Yes, that would be a by-right use. A by-right use. Now how would you distinguish that from a substance abuse service facility? What would be the distinction? Basically the same things as for a nursing home where you have individuals who are unable to physically take care of themselves. But this says that this is not a nursing home and they just get supervision and assistance. You say basically they're physically confined, physically unable to get out. As noted by Judge Cleland. Say again. They're physically unable to attend to themselves. That's Judge Cleland. So that's the difference between that and one of these recovering drug abuse persons. They are able to take care of themselves. What's the zoning distinction there? Why is one subject to a different zoning than the other? Because they walk out? I'm just trying to get at the distinctions. I think I understand what the distinctions are. I'm trying to get at them real specifically, what the distinctions are. In a nursing home, people do leave. What's the difference then? What's the difference between a nursing home and a rooming house? Or is a nursing home and a rooming house the difference as I understand it? In language terms. They're lying in bed and can't walk out in a nursing home and in a rooming home they can go wherever they want. Is there any other difference? Excuse me, Your Honor. Is there any other difference? Oh, absolutely. What are some of these differences? A rooming house is a conditional use just like a residential substance abuse service facility. And as Judge Cleland pointed out. I don't know why that's just a statement of your answer. It's the same. But why is it the same and not different? In the way that some of these other things are different. Because a nursing home. Provides care. They don't have to show all these things. They're just allowed to locate them. Right? In that zone. They're not subject to all of those. Well, they're not subject to a hearing. There are other requirements. But they're not subject to a conditional use here. Conditional use. With respect to a rooming house. As Judge Cleland pointed out. And I think this is the best indication that there is no facial or any other discrimination here. As Judge Cleland points out. If. Take away the element of substance abuse. Assume that none of these men. Ever. Had used drugs or alcohol. Well, what would this facility be? It would be akin to a rooming house. Right? Why can't you do the same? And a rooming house also requires. This is my question, counsel. Why can't you do the same analysis that you just did. With respect to. An adult foster care facility. That's my question. If you could answer that. It would make sense. But if there's no answer. It seems to me. Very difficult. I think it goes back to the same reason for a nursing home. People that need care. To attend to their. Activities of daily living. And so there's more care that's needed. When you have. A. Adult foster care facility. Than there is. When you're in a substance abuse facility. Is that the idea? More care from a physical aspect. Absolutely. Like what? I don't know. I don't know. Why is that? I assume you're right. But what's the reason? Because. People are in foster care. Because they are. They are unable to. Take care of their needs. And as George Cleland pointed out. The individuals in a facility. Such as get back up. Despite. Other problems that they. They have. Are able to physically attend to themselves. That's the distinction. All right. Why is that a distinction? That makes any difference under zoning law. Because. The purpose of. The purpose of zoning law. And the purpose of a conditional use hearing. Is to. Assess. On a case by case basis.            It's a. It's a. It's a. It's a. It's a. It's a. It's a. It's a. It's a. It's a. It's a. It's a.           It's a. It's a.     It is a. It's a. You do not say. If there's. Regardless of familiar. No. It's a. It's a. It's a. It's a. It's a. I'm feeling. It's a. I. It's a. It's a. It's a. It's a.  It's a. It's. It's a. And the rooming house, the basic difference you come down to when we talk about the difference between not just a nursing home, but also one of these adult foster care facilities. It has to do with. Whether they go out or not, I guess, whether they go out on their own and create security issues. I thought that was the bottom line difference. Is there any other difference? I think it comes down to the the individual's ability to to attend to themselves. As you agree or disagree with the contention that mere security issues are not enough to justify what otherwise would be a facial discrimination. Security security concerns take take many forms. That's not the question. The question is, do you agree or do you not agree with the contention that security issues alone, security rationales alone cannot justify what otherwise is a facial distinction that is alleged to be discriminatory on the basis of these statutory criteria? I disagree with that. However, there's way more than security concerns. What's the basis for your disagreement? Is the case that he cites incorrect or what? You know what case he's referring to? I have to look it up. I'm sure he's going to mention it.  The. First of all, I again, as I say, there's no facial discrimination here. Therefore, and there's no evidence of direct discrimination. Therefore, we have to go into the balancing of McDonnell Douglas. And in the plaintiff hasn't met their birth, has not met the burden of showing that that there's any animus or that there's any. The the ordinance, just to sum up, the ordinance is. Facially clear. We use it. Is that right? This is all about motivation. And that's what it's all about. True. But what we're saying here is there is no facial discrimination here because there are 69 uses, all of which require a conditional use here. And I again, I think the clearest. Showing of that is to say, take out the element of substance abuse. And what then would get back up? Be. And it would be a rooming house, which also requires the exact same hearing. And remember also from April of 2009 to the present. So far as we know, get back up has been operating without. The condition without the conditional use permit illegally. Is that related to the facial? Is that argument related to the facial? What what what I'm saying is Judge Murphy in the circuit court noted to get back up when he sent the case back in April of 2009, that they basically had a trial period to show that they were that they would be entitled to to this permit. If the facility had been run properly. During during that nine months, the result probably would have been different. Thank you. You'll see the red light. Thank you. Let's talk about the adult foster care facility first. Just clearly didn't talk about it in his decision. He glossed over it either intentionally or not. The city's never been able to provide an answer to the question you asked. And in fact, the zoning chart that we've attached is clear that it's a by right use in the same areas as a substance abuse treatment facility is a conditional use. There is no explanation. There's no care necessarily required. It's not as strict as a nursing home in terms of medical necessity. It's people that are living in group home and it could be older people or not older people, but they're adults. Adult foster care is defined pretty broadly. It is a by right use. So the city, because they've never been able to distinguish it or analogize it, and just Cleveland didn't. That is the. Among many, one of the problems with the ordinance, the city still can't defend it, I think, because they've never tried to. And just clearly didn't have anything in the record about it. The issue that you raised on the related point is to look through the other zoning that the city's got in place. And we put this in our brief. If you look at the way the city has zoned medical clinics versus non-residential substance abuse clinics. So if people are not living there, non-residential, the city allows medical clinics in places where you have to get a conditional use permit. If you're running a substance abuse treatment facility, non-residential. It's the same thing. It's patient care for people that are disabled. But one has drug addicts recovering and alcoholics recovering. The other doesn't. And the city distinguishes between those two. The city allows a pre-release center, people who are in a halfway house, under more favorable conditions than a substance abuse treatment facility residential. How can that be? If the issue is recent contact with law enforcement, people in a pre-release center, a halfway house, are by definition more recent contact with law enforcement than people in a substance abuse facility. And yet they are allowed to come in more favorably than a recovery house. It makes the city's argument disingenuous. Throughout the zoning, from beginning to end, in every possible situation, the city has identified substance abuse service facilities and put them in a separate category. They can't defend it now. They didn't before Judge Cleaver. The argument about criminal activity or security. The MX case specifically says and rejects the argument that discrimination based on a fear of criminal activity is permissible. Because a fear of criminal activity is... No, it doesn't. What it says is, and this is from Marie, where the discrimination results from unfounded fears and stereotypes. Right. So you do first have to establish, if you're coming under the MX case, that the fears are unfounded and stereotyped. And, Your Honor, I'm sorry. I was reading from the decision and the language I used was a quote, so I didn't misquote it. But the argument about unfounded fears and stereotypes has to do with, if the city is relying on a bolder affidavit, paragraph 14, and says there's more recent contact with law enforcement, and that's our defense. That alone, in light of the fact that a pre-release center is given more favorable treatment, is disingenuous. Recent contact with law enforcement is not the reason. Or a pre-release center would not have favorable treatment. So it's disingenuous. Number two, there's nothing in the record that would show how many clients of a substance abuse treatment facility have more recent contact with law enforcement. As we pointed out in our brief, this could be used as a proxy to discriminate against African Americans. If you said, we're not going to let your use exist because your people have more recent contact with law enforcement. If you did that, and that was permitted in the city of Detroit and many other urban cities, that would be based on race. It's a proxy. Well, it's a proxy, but it's an unacceptable proxy, whereas other proxies don't partake of race, don't partake of drug use. If there's not more security issues where people are recovering from drugs than when people aren't recovering from drugs, is it race discrimination to think that might be the case? Well, obviously this isn't a race case, but the argument I'm making is that the unfounded five or six word sentence that says, recent contact with law enforcement. If that is the entire basis for the distinction, that is a proxy that can be used for any number of discriminatory attempts. That's fair, but again, it's a facial challenge. Yes. What we're arguing about is a facial challenge. If on its face these distinctions have their pluses and their minuses with respect to various categories and zoning is a part and not a science, you could see in that sense a difference between a drug treatment center and a nursing home. It's people who have recent contact with drug dealers, presumably, among the whole, or more likely. Isn't that the case? I mean, where do they get these drugs in therapy? Your Honor, with all respect, these people could be people who have prescription drug habits. They could be alcoholics who don't have any contact with drugs. So it's not necessarily true, and there's no evidence to the record that any portion, whether it's small, medium, or large, of the population has had recent contact with any particular law enforcement. It's, as much as anything, a myth or stereotype about recovering addicts and alcoholics that may be unfounded, may be founded, but it is still a myth and a stereotype. It could be manyfolder. It could be. And that's ultimately what this is. It is a rehab facility. It happens to be located in an urban center. It happens to have an urban population, but it is a very successful rehabilitation facility. Thank you, counsel. The case will be submitted. There's nothing further this morning.